EDMOND STRYJEWSKI and JEAN STRYJEWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stryjewski v. Commissioner
Docket No. 3834-73.
United States Tax Court
T.C. Memo 1975-174; 1975 Tax Ct. Memo LEXIS 196; 34 T.C.M. (CCH) 763; T.C.M. (RIA) 750174; June 2, 1975, Filed Ronald F. Kidd, for the petitioners. Gerald V. May, Jr., for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' income taxes and additions to tax under section 6653(a) [1]/ in the following amounts: Year
Tax
Addition
1969
$17,232.87
$861.64
1970
1,296.39
64.82
Some of the matters raised in the petition have been settled by stipulation. The remaining issue is whether respondent correctly determined that petitioners' bank deposits and cash expenditures reflected gross receipts from business in excess of the amounts reported on their returns. FINDINGS *197 OF FACT Some of the facts are stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, Edmond and Jean Stryjewski, are husband and wife. They filed joint income tax returns on the cash basis for the calendar years 1969 and 1970. The 1969 return was filed with the district director of internal revenue, Pittsburgh, Pennsylvania. The 1970 return was filed with the district director of internal revenue, Philadelphia, Pennsylvania. At the time the petition was filed, petitioners resided in Buckingham, Pennsylvania. During the taxable years in issue, petitioners operated an individual proprietorship [2]/ known as the Tacony Beer Distributing Company. They sold beer and soda at retail, primarily at the place of business but also by delivery to private homes. On their joint returns, they reported net profits from this business of $3,317.79 in 1969 and $10,528.81 in 1970. Mr. Stryjewski was responsible *198 for maintaining the business records, with the exception of the daily sales worksheet which was kept as a continuous summary of sales as they occurred. Individual sales were recorded on this worksheet by the person making the sale, which could be Mr. or Mrs. Stryjewski or their son, who also worked in the business. The sales worksheet was the only itemized record of sales made on the premises, since sales slips were prepared only for deliveries and petitioners' cash register did not use tapes. The worksheet and sales slips were totaled daily and reconciled with the cash register total. The sales worksheet was the basis on which Mr. Stryjewski prepared other records, including a Sales Daily Register, a Cash Receipts Register, a Daily Sales Summary, and a Perpetual Inventory Record. He kept a record of business expenditures in his checkbook, including expenses paid in cash. This record was transferred to a Cash Payments Register. A separate Purchase Daily Register recorded purchases of inventory, which were subsequently transferred to the Perpetual Inventory Record. Numerous business and personal expenses were paid in cash from sales receipts. Beer and soda purchases were paid for *199 by check. Petitioners had a joint personal and a business checking account, as well as personal savings accounts. Mr. Stryjewski wrote all checks on the business account, while Mrs. Stryjewski wrote all checks on the personal checking account. Mrs. Stryjewski made all deposits to the accounts. The business receipts were turned over to her for that purpose. They were not deposited intact daily, but were deposited periodically to both business and personal accounts. In addition, some cash receipts were used for personal expenses and some were kept by Mrs. Stryjewski. She received a cash allowance of $100 per week for household expenses. At no time during the years in issue were cash receipts and disbursements records reconciled with bank account deposits and cash on hand, although regulations of the Liquor Control Board required this to be done monthly, and the business was subject to spot inventory checks by the Board. Petitioners' income tax returns were prepared by an accountant from yearly summaries supplied by Mr. Stryjewski. The accountant did not have access to petitioners' bank statements. Respondent computed alleged understatements of gross business receipts as follows: *200 1969
1970
Deposits:
Savings
$ 9,657.92
$ 8,750.03
Personal checking
17,181.76
5,460.95
Business checking
261,484.37
270,727.13
$288,324.05
$284,938.11
Plus:
Business and personal
expenses paid in cash
15,117.70
16,390.60
$303,441.75
$301,328.71
Less:
Nonbusiness deposits:
Sales tax
$14,097.03
$16,000.00
Interest, rents and
miscellaneous
4,136.99
3,094.58
Transfers between
accounts
5,000.00
6,500.00 lGross business receipts
$280,207.73
$275,734.13
Reported
236,669.89
271,006.93
Unreported
$ 43,537.84
$ 4,727.20
Petitioners made nonbusiness cash expenditures of not less than $5,200.00 in each year. Petitioners had a son and a daughter living at home who were employed during 1969 and 1970. Both contributed a portion of their weekly earnings to the household. From the time petitioners were married in 1940, Mrs. Stryjewski kept cash funds in a hiding place in her home and in a bank safe deposit box. Over the years, she accumulated these funds out of her own, her husband's, and her children's earnings, and from gifts. Mr. Stryjewski never knew about these funds during the years in issue. His wife kept their existence *201 a secret because she was afraid that he would want to spend the money or invest it in the business. The petitioners' taxable income (or loss), as reported on their returns for the years 1963 through 1968, was as follows: 1963
$ 3,923.43
1964
16,155.90
1965
6,747.69
1966
6,046.08
1967
(11,740.62)
1968
3,175.05
Petitioners maintained substantial balances in savings accounts, resulting in interest income of $2,381.39 in 1969 and $2,149.34 in 1970. ULTIMATE FINDINGS OF FACT 1. Petitioners understated their gross business receipts by $25,537.84 in 1969 and by $2,527.20 in 1970. 2. Part of the underpayment in tax in those years was due to negligence or intentional disregard of rules and regulations. OPINION Respondent determined, from an examination of petitioners' bank deposits and cash expenditures, that their gross receipts from business were understated on their returns. He increased their gross receipts and taxable income accordingly. Petitioners contend that their gross receipts were accurately reflected in their records and reported on their returns and that bank deposits and cash expenditures in excess of those amounts are attributable to *202 other sources. The principal source relied on is a cash hoard alleged to have been kept by Mrs. Stryjewski. Initially, we reject any suggestion that because the gross receipts ascertainable from petitioners' business records are in accord with the amounts shown on their returns, respondent is precluded from showing additional gross receipts by an indirect method. Quite apart from section 446, the bank deposits plus cash expenditures method, as has been said of the net worth method -- is not a method of accounting at all. When properly employed, it is merely evidence of unreported income, and there is no rule that prohibits its use merely because the taxpayer keeps books utilizing a system of accounting that is capable of accurately reflecting income. This is plainly articulated in , where it was pointed out that even where no specific false entries are detected, the books may nevertheless be "more consistent than truthful." (Raum, J., concurring). See also (C.A. 3, 1957), modifying *203 on another issue . Thus, even the apparent internal consistency of petitioners' records does not persuade us that further inquiry into the source of the funds shown to have been spent or deposited is unwarranted. Petitioners argue that the respondent may not use the bank deposits method of redetermining taxable income unless he first establishes the amount of cash on hand at the beginning of the taxable year. The cases cited in support of this proposition relate to criminal tax prosecutions and have no application in this case, where the petitioners not the respondent have the burden of proving the source of their deposits. (C.A. 5, 1967), affg. ; (C.A. 3, 1952); ; . The issue is wholly factual, and depends principally upon our evaluation of the testimony and other evidence. We accept Mrs. Stryjewski's testimony that she had thriftily accumulated some cash by 1966 and that she continued to *204 maintain a cash hoard through the years in question. We also believe that the petitioners' children, while living at home, did turn over some part of their earnings to their mother. However, we observe that her cash hoard may well have been considerably depleted due to the substantial losses incurred by the business in 1967. It appears to have been her custom to pay all expenses out of cash prior to opening a personal checking account in 1968. While both petitioners testified as to the sources of specific deposits in the business account, her testimony regarding deposits to the personal account was much less definite. Moreoever, we doubt -- particularly in view of her policy of secrecy regarding cash accumulations, and the reasons therefor -- whether she would have expended or committed to the business the bulk of her cash on hand. We find it unnecessary to determine the exact amount of Mrs. Stryjewski's cash hoard. We are satisfied, however, that it was sufficient to support our conclusion that she "loaned" funds to the business in each of the years before us. These "loans", [3] aside from those for which respondent has already given petitioners credit, amounted to $18,000 in 1969 *205 and $2,200 in 1970. Beyond these amounts, we are not persuaded on the basis of the record before us that any additional sums which found their way into the bank accounts should be considered as having originated from nontaxable sources. [4] Consequently, we hold that petitioners have failed to show by a preponderance of the evidence that they did not have additional gross receipts in the amounts set forth in our ultimate findings of fact. Their taxable income should be adjusted accordingly. Petitioners' only argument against the imposition of the addition to tax asserted under section 6653(a) is that their income was accurately *206 reflected in their records. Our findings as to unreported income indicate that their books were not in fact kept in an adequate and proper manner. We conclude that at least part of the understatement of income in each year was due to negligence or intentional disregard of rules and regulations. See , affd. per curiam (C.A. 6, 1956).[5] The addition to tax is therefore justified. Decision will be entered under Rule 155.
Footnotes
1. /↩ All references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.
2. /↩ The record reveals no partnership agreement as such. We interpret the stipulated reference to an "individual proprietorship" to mean that the business was owned by Mr. Stryjewski, but operated by him and his wife.
3. Petitioners' records show that $1,000.00 was repaid in each year on account of loans from Mrs. Stryjewski to the business. ↩
4. It seems more likely that the $22,000, which corresponds to a substantial proportion of the claimed cash hoard and was deposited in the personal checking account during the years in issue, came from sources other than the cash hoard, i.e., from receipts from the business. Our view in this regard is reinforced by the fact that we have determined to consider $20,200 of the claimed cash hoard as having been loaned to the business.↩
5. See .↩